IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  11-cv-00257-WYD-CBS

BETTY J. BARKMAN; and
GERALD E. HEAL,

    Plaintiffs,

v.

BRIAN WILSON, in his individual capacity acting under the color of law as Road and Bridge Engineer/Supervisor for Montrose County, Colorado;
BOARD OF MONTROSE COUNTY COMMISSIONERS, Montrose Colorado in their official capacity;
KATHLEEN OZGA, in her individual capacity acting under color of law as Northern Division Lands and Recreation Group Chief, Upper Colorado Region, Western Colorado Area, Bureau of Reclamation, United States Department of the Interior; and
CAROL DeANGELIS, in her individual capacity acting under color of law as Area Manager, Upper Colorado Region, Western Colorado Area, Bureau of Reclamation, United States Department of the Interior,

    Defendants.

**ORDER**

I.    <u>INTRODUCTION AND BACKGROUND</u>

THIS MATTER is before the Court on the Motion to Dismiss by Defendants Kathleen Ozga and Carol DeAngelis Pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(5) filed May 20, 2011 [ECF No. 25].

This case involves a dispute over the ownership of land on and adjacent to an irrigation ditch road that runs along the western edge of certain real property owned by Plaintiffs Betty Barkman and Gerald Heal in Montrose County, Colorado.  Plaintiffs, who

are representing themselves *pro se*, bring claims against Defendants Kathleen Ozga and Carol DeAngelis, both of whom are employed by the United States Department of the Interior (the "Federal Defendants"), and Brian Wilson, an employee of Montrose County Colorado, and the Montrose County Board of County Commissioners (the "County Defendants"), for (1) a taking of private property without just compensation; (2) violation of their right to due process; (3) violation of their right to equal protection; (4) conspiracy to deprive them of their constitutional rights; and (5) failure to prevent the deprivation of their Constitutional Rights.  Complaint at ¶¶ 1-4.

Plaintiffs' Complaint is comprised of 270 separate allegations and is 44 pages in length.  Therein, Plaintiffs allege that they are the owners of a 2.96 acre tract of property in Montrose County, Colorado (the "Property").  Plaintiffs allege that they intended to build their future retirement home on the Property.  In the Spring of 2005, prior to purchasing the Property, Plaintiffs investigated ownership of what they describe as an "un-maintained, single-lane, dirt irrigation 'ditch' road" on the western edge of the Property.  Plaintiffs spoke with Brian Wilson, the Montrose County Road and Bridge Supervisor, who informed them that Montrose County was not claiming ownership of the road "at this time."  Complaint at ¶ 24.  Plaintiffs also spoke with Bonnie Glover of the Uncompahgre Valley Water Users Association (the "Association"), who indicated that the road and the canal running next to the road were part of the Montrose and Delta ("M&D") canal system "owned by the federal government."[1]  Complaint at ¶ 27.

---

[1]The specific part of the canal at issue is referred to in the Complaint as the CQA Lateral, and the road running next to the CQA Lateral is referred to as the Operation and Maintenance ("O&M") road.  Complaint at ¶ 68.

Plaintiffs purchased the Property on June 2, 2005.  On October 22, 2005, Plaintiffs applied for a County driveway permit located where the ditch road intersected a paved county road.  In response, the Montrose County Land Use Director informed Plaintiffs that the Property was illegally subdivided and no permits for development on the Property could be issued until a remedy had been approved by the County Commissioners.  Thereafter, Plaintiffs, Montrose County officials and the Department of the Interior, Bureau of Reclamation, were involved in a lengthy dispute regarding ownership of all or part of the ditch road and adjacent canal.

According to the Complaint, on February 23, 2006, Defendant Ozga sent a letter to Montrose County officials stating that based on language in a 1908 deed, "[i]t is the [Department of the Interior] Regional Solicitor's opinion that the United States acquired the M&D Canal and the facilities identified in the deed in fee simple ownership."  Complaint at ¶¶ 35, 65.  On October 31, 2006, Defendant Ozga sent a similar letter to Plaintiffs stating "[i]n summary, the United States owns in fee simple the CQA Lateral and its associated facilities, including the O&M road.. . . .  As a reminder, the use of the Reclamation's O&M roads by anyone other than the Association is generally prohibited."  Complaint at ¶¶ 68-69.  In January, 2007, Defendant Ozga informed Plaintiffs that they would need a lease and rental payments to use the O&M road on their property as a driveway.  Complaint at ¶ 70.  In September, 2007, Defendant DeAngelis sent another letter to both Montrose County officials and Plaintiffs in which she reaffirmed the United States' claim to fee simple ownership of the O&M road and its associated facilities.  Complaint at ¶¶ at 83-85.  Sometime in September 2008, the Federal Defendants met

with Montrose County officials to discuss the dispute. Complaint at ¶¶ 146-149. On September 24, 2008, Defendant Ozga reported to Plaintiffs that the United States would not challenge Montrose County's claim to have a prescriptive easement over a portion of the O&M road. Complaint at ¶¶ 152-154.

Based on these allegations, Plaintiffs contend that the Federal Defendants "took the Plaintiffs' property by giving notice to the Plaintiffs of a claim of fee simple ownership for land that had historically been under federal easement," "threaten[ed] to charge the Plaintiff's for access to their own property," and conspired with Defendant Wilson by negotiating an agreement not to pursue the United States' claim of ownership against the County. Complaint at ¶¶ 16-18; 253.

Plaintiffs claims against the Federal Defendants are based on *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971); 42 U.S.C. §§ 1983, 1985, 1986, 4651; 43 U.S.C. § 421; and 18 U.S.C. §§ 241, 242, 1001, 1018, 1349. Complaint at ¶ 7. Plaintiffs seek compensatory and punitive damages, and injunctive and declaratory relief to "restore the uncontested status quo and bar ongoing and systematic continuing violation of their constitutional rights." Complaint at ¶ 274.

II.   MOTION TO DISMISS

   A.   Standard of Review

The Federal Rules of Civil Procedure provide that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the

plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted). "A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 1950.

Because Plaintiffs are proceeding *pro se*, "[their] pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). This means that "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff[s] could prevail, it should do so despite [their] failure to cite proper legal authority, [their] confusion of various legal theories . . . or [their] unfamiliarity with pleading requirements." *Id.* At the same time, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*

B. <u>Analysis</u>

1. <u>Claims for Violation of 42 U.S.C. §§ 1983, 1985, 1986 and 4651; 43 U.S.C. § 421, and the Federal Criminal Code</u>

As an initial matter, to the extent Plaintiffs are attempting to bring claims against the Federal Defendants based on 42 U.S.C. §§ 1983, 1985, 1986 and 4651; 43 U.S.C. § 421, and various provisions of the Federal Criminal Code, those claims will be dismissed as a matter of law.

First, in order to state a claim under 42 U.S.C. § 1983, Plaintiffs must allege deprivation of a right secured by the Constitution or federal law committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Here, there are no allegations that the Federal Defendants acted under color of *state law*, and thus any claims against them pursuant to § 1983 will be dismissed.

Next, I note that the necessary elements of a § 1985(3) claim are: "(1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom." *Tilton v. Richardson,* 6 F.3d 683, 686 (10th Cir.1993). Section 1985(3) only applies to "conspiracies motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" *Hall v. Wilson,* No. 10–cv–01460, 2010 WL 3310357, at *2 (D.Colo. Aug. 18, 2010) (quoting *Grifin v. Breckenridge,* 403 U.S. 88, 102 (1971)). The "otherwise class-based" language of this requirement has been "narrowly construed" and does not, for example, reach conspiracies motivated by an economic or commercial bias. *Tilton*, 6 F.3d at 686. Here, the Complaint is devoid of

any allegations of racial or class-based discriminatory animus and, therefore, Plantiffs have failed to state a claim for relief under section 1985.

In addition, section 1986 provides:

> that "[e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in *section 1985 of this title*, are about to be committed, and having the power to prevent or aid in preventing the commission of the same, neglects or refuses to do so . . . shall be liable to the party injured. 42 U.S.C. § 1986.

Because the Complaint does not allege a violation of section 1985, it also fails to state a claim based on a failure to prevent a violation of that section.

Plaintiffs claims based on violation of the federal Criminal Code must also be dismissed. Private citizens cannot prosecute criminal actions. *Mamer v. Collie Club of America, Inc.*, 229 F.3d 1164 (10th Cir. 2000); *see also Higgins v. Neal*, 52 F.3d 337, 1995 WL 216920 at *1 (10th Cir. Apr. 12, 1995) ("[b]ecause allowing private citizens to initiate prosecutions would undermine prosecutorial discretion and the authority of federal prosecutors, we conclude [the defendant] lacks standing to maintain this criminal action."). None of the criminal statutes cited by Plaintiffs provides a basis for civil liability or create a private right of action. *See Clements v. Miller*, 2005 WL 2085497 at *3-4 (D. Colo. 2005) (unpublished) (discussion the lack of a private right of action under 18 U.S.C. §§ 241, 242, and 1001); *see also Newcomb v. Ingle*, 827 F.2d 675, 677 n.1 (10th Cir. 1987). Therefore, Plaintiffs claims brought pursuant to 18 U.S.C. §§ 241, 242, 1001, 1018, 1349 will be dismissed.

Plaintiffs claims under 42 U.S.C. § 4651 will also be dismissed. This section of

the Uniform Relocation Assistance and Real Property Acquisition Policies Act, does not create a private right of action in landowners.  *See United States v. 410.69 Acres of Land, More of Less in Escambia County*, 608 F.2d 1073, n. 1 (5th Cir. 1979) (this section of the Act is, in essence, "no more than a statement by Congress of what it perceives to be the preferred method of dealing with landowners with the Government wants to acquire their land"); *Portland Nat. Gas Transmission Sys. v. 4.83 Acres of Land*, 26 F.Supp.2d 332, 336 (D.N.H. 1998) (the Act does not create any substantive rights).

Finally, Plaintiffs claim under 43 U.S.C. § 421, which deals with the Federal Government's power to condemn land for irrigation projects, will be dismissed because the Federal Government has not initiated condemnation proceedings against Plaintiffs.

### 2. Claim for Violation of Due Process, Equal Protection, and Taking Without Just Compensation under *Bivens*

I now turn to Plaintiffs' claims for violation of their constitutional rights to due process, equal protection, the right to be free of any taking without just compensation, and conspiracy to deprive them of the constitutional rights, brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *Bivens* creates a cause of action against federal officials similar to the cause of action § 1983 creates against state officials.  A *Bivens* action will lie where a defendant has violated a plaintiff's rights under color of federal law.

The Federal Defendants assert that dismissal of these claims is appropriate because (1) there is no remedy under *Bivens* in this case; (2) even if Plaintiffs have

stated a claim under *Bivens*, the statute of limitations bars such a claim; and (3) because the Federal Defendants are entitled to qualified immunity.

In *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) the Supreme Court found that a victim of a Fourth Amendment violation had a claim for damages against officers acting under color of federal law.  Since that time, the Supreme Court has extended *Bivens* liability only in the context of allegations of employment discrimination in violation of the Due Process Clause of the Fifth Amendment, and for cruel and unusual punishment in violation of the Eight Amendment. *See Davis v. Passman*, 442 U.S. 228 (1979); *Carlson v. Green*, 446 U.S. 14 (1980).

Since *Carlson*, the Supreme Court has declined to imply a *Bivens* remedy in several cases, including *Wilkie v. Robbins*, 551 U.S. 537 (2007), where the Court found that a landowner did not have a private action against employees for the Bureau of Land Development for damages under *Bivens*.  In that case, the Supreme Court stated that creation of a new *Bivens* request required consideration of (1) whether any alternative, existing process exists for protecting the interests at stake and (2) whether any special factors counsel hesitation before authorizing a new federal remedy.  *Wilkie*, 551 U.S. at 550.

Plaintiffs have framed the dispute described in their Complaint as a unconstitutional taking.  However, Plaintiffs cite no cases in which *Bivens* liability has been extended in this context.  The Federal Defendants contend that it would be inappropriate to imply a *Bivens* remedy in this case because Congress has provided two alternative processes to protect Plaintiffs' interest in challenging the Federal

Defendants' claim of ownership and preventing a taking of their property without compensation. First, Plaintiffs could avail themselves of the Quiet Title Act, 28 U.S.C. § 2409, which is the exclusive means by which adverse claimants may challenge the United States' title to real property. Second, Plaintiff could sue the United States for damages under the Tucker Act, 28 U.S.C. § 1491(a)(1). The existence of these alternative remedies capable of protecting the constitutional interests at stake constitute a "convincing reason" for this Court to "refrain from providing a new and freestanding" damages remedy. *Minneci v. Pollard*, 132 S.Ct. 617, 621-23 (2012); *Wilkie*, 551 U.S. at 550. Therefore, I decline to imply a *Bivens* remedy in this case.

### 3. Statute of Limitations

However, even if a *Bivens* remedy were applied in this context, the applicable statute of limitations would bar such a claim. A *Bivens* claim is subject to the general personal injury statute of limitations in the state where the claim arose. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985); *Industrial Constructors v. U.S. Bureau of Reclamation*, 15 F.3d 963, 986 (10th Cir. 1994). In Colorado, the general statute of limitations for personal injury claims provides that such a claim must be brought within two years after the action accrues. *See* C.R.S. § 13-80-102. Here, Plaintiffs filed their Complaint in February 1, 2011. Therefore, the conduct that forms the basis for their *Bivens* claim must have occurred after February 1, 2009.

Upon review of the Complaint, the motion to dismiss, Plaintiffs' response and supplemental response, and the reply, it is clear that all of the conduct that forms the basis for Plaintiffs' claims against the Federal Defendants occurred prior to February 1,

2009. As discussed above, Plaintiffs were first notified of the United States claim of ownership of the CQA Lateral and O&M road in the Spring of 2005 when Ms. Glover informed them that they were part of the Montrose and Delta ("M&D") canal system "owned by the federal government." In addition, Plaintiffs allege that they were informed of the United States claim of fee simple ownership of the O&M road and "associated facilities" by the Federal Defendants' letters of October 31, 2006, and September, 2007. The only events in the Complaint concerning the Federal Defendants alleged to have occurred after February 1, 2009, involve (1) an e-mail from Defendant Ozga to Plaintiffs reiterating the information contained in her 2006 and 2007 letters, and informing her that the Federal Defendants would not issue an easement to the County Defendants "since the county already believes it has a prescriptive easement," and (2) a letter written by Defendant DeAngelis to Congressman John Salazar in June, 2010, reiterating the United States' position as set forth in Ozga's October, 2006, letter.

In their response, Plaintiffs contend that their claims did not begin to accrue until June, 2010, the date of Defendant DeAngelis' letter to Congressman John Salazar in which she reiterated the information contained in Defendant Ozga's October, 2006, letter, because prior to that time they had reason to believe that the Federal Defendants were going to "change their position." I find this argument unpersuasive. A *Bivens* claim accrues "when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Inuds. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994). Here, Plaintiffs clearly had reason to know of the Federal Defendants claim to ownership of the CQA Lateral and

-11-

O&M road in October, 2006. The fact that the Federal Defendants did not provide them with a legal description of the claimed property does not alter this conclusion because "[a] plaintiff need not know the full extent of his injuries before the statute of limitations begins to run." *Indus. Constructors*, 15 F.3d at 969.

Plaintiffs were permitted to file a supplemental response concerning the statute of limitations. Therein, Plaintiff set forth in greater detail their ongoing attempts to resolve the conflict between their claim of ownership and the positions taken by the County Defendants and the Federal Defendants in 2007 and 2008. Plaintiffs also assert for the first time that they are entitled to rely on the doctrine of equitable tolling. According to Plaintiffs, they were faced with a confusing situation where two different governmental entities each claimed ownership of some portion of Plaintiffs' Property, and they did not fully understand the reasons for the Federal Defendants actions until receipt of a December 23, 2009, e-mail from Defendant Ozga, reiterating to Plaintiffs that the United States ownership claim is based solely on a 1908 deed.

Under Colorado law, equitable tolling is applied in two distinct situations: (1) when "defendant's wrongful conduct prevented the plaintiff from asserting the claims in a timely manner;" and (2) when "truly exceptional circumstances prevented the plaintiff from filing the claim despite diligent efforts." *Noel v. Hoover,* 12 P.3d 328, 330 (Colo. Ct. App. 2000); *see also Brodeur v. American Home Assur. Co.*, 169 P.3d 139, 149 (Colo. 2007) ("The statute of limitations may be equitably tolled where the defendant's wrongful conduct prevented the plaintiff from asserting his or her claims in a timely manner. . . . Other jurisdictions have applied equitable tolling where 'extraordinary

circumstances' make it impossible for the plaintiff to file his or her claims within the statutory period."); *Dean Witter Reynolds, Inc. v. Hartman,* 911 P.2d 1094, 1096-97 (Colo. 1996). In practice, however, Colorado courts rarely allow equitable tolling. *Escobar,* 668 F. Supp. 2d at 1272.

Here, there are no allegations that the Federal Defendants misled Plaintiff, or committed any other wrongful conduct that would have prevented Plaintiffs from filing their claims in a timely manner. *See Indus. Constructors*, 15 F.3d at 969 (equitable tolling requires plaintiff to show his ignorance of the cause of action is due to affirmative acts or active deception by Defendant to conceal the facts giving rise to the claim). Nor do the circumstances of this case constitute "truly exceptional circumstances" that would otherwise justify equitable tolling of Plaintiffs' claims. Even assuming Plaintiffs did not fully understand the basis for the Federal Defendants' claim of ownership until 2009, this does not alter the accrual date. Since 2006, the Federal Defendants have consistently maintained that the United States' owns the O&M road and its associated facilities. It is clear from the allegations in the Complaint that Plaintiffs were aware of this claim of ownership in 2006.

Finally, contrary to Plaintiffs' assertion, there are no allegations in the Complaint of an "ongoing and evolving conspiracy" between the Federal and County Defendants that would extend the statute of limitations. The Tenth Circuit has recognized that "an allegation of a conspiracy constitutes a viable claim under § 1983 even if the alleged conspiracy began at a point that would be barred by the statute of limitations." *Hunt v. Bennett*, 17 F.3d 1262, 1266. "[W]hat matters for statute of limitations purposes is the

date on which the conspiracy claim accrued, not the date that the defendants allegedly commenced their conspiracy." *Id*.  However, at least one act must occur within the statutory filing period, and Plaintiffs cannot rely on a conspiracy allegation "to challenge discrete actions that occurred outside the limitations period even though the impact of the acts continues to be felt." *McCormick v. Farrar*, 147 Fed. Appx. 716, 720 (10th Cir., Aug. 30, 2005).

Here, the only allegations in the Complaint relating to a conspiracy between the Federal Defendants and the County Defendants concern a meeting between the Federal Defendants and the County Defendants in August, 2008.  Plaintiffs learned of the meeting in September 2008, when Defendant Ozga reported to Plaintiffs that the United States would not challenge Montrose County's claim to have a prescriptive easement over a portion of the O&M road, and would grant an easement to Montrose County for use of a portion of the O&M road.  Construed in the light most favorable to Plaintiffs, these allegations demonstrate that the Federal Defendants and the County Defendants met and discussed their respective claims to the O&M road, and the Federal Defendants ultimately determined they would not challenge the County Defendants' claim.  Even assuming Plaintiffs have sufficiently alleged an "agreement" between the parties that could somehow be construed as a conspiracy to violate Plaintiffs' constitutional rights, Plaintiffs were aware of the alleged conspiracy in September, 2008, more than two years before they filed their Complaint.

I find that all of the alleged misconduct by the Federal Defendants occurred more than two years prior to the date Plaintiffs filed their Complaint on February 1, 2011.

Because Plaintiffs have not demonstrated that the applicable statute of limitations was tolled, their claims are time-barred and must be dismissed.

III.     CONCLUSION

For the reasons set forth above, it is hereby

ORDERED that Motion to Dismiss by Kathleen Ozga and Carol DeAngelis Pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(5) filed May 20, 2011 [ECF No. 25] is **GRANTED** and the claims and causes of action asserted against them are **DISMISSED**.

Dated: March 30, 2012

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief U. S. District Judge